**UNITED STATES of America, ex rel. Martin STEWART, on Behalf of Jose TINEO, Petitioner–Appellee,**

v.

**Honorable Walter KELLY, Superintendent of Attica Correctional Facility, Respondent–Appellant.**

**No. 544, Docket 88–7857.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1988.

Decided March 17, 1989.

Brian T. McGovern, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of New York, New York City, of counsel), for respondent-appellant.

Martin Stewart, New York City (Bivona & Cohen, New York City, of counsel), for petitioner-appellee.

Before VAN GRAAFEILAND, MESKILL and MINER, Circuit Judges.

MESKILL, Circuit Judge:

This appeal is brought by respondent-appellant Kelly, superintendent of Attica prison, from an order of the United States District Court for the Southern District of New York, Stanton, J., granting a petition for a writ of habeas corpus brought by petitioner-appellee Tineo pursuant to 28 U.S.C. § 2254 (1982). Appellant contends that Tineo's Sixth Amendment right to counsel was not denied by the trial court when it refused to allow Tineo to be represented by the attorney he chose, Kenneth Linn, because of a conflict of interest between Tineo and a prosecution witness who was a former client of Linn. We agree with appellant, and we reverse.

## BACKGROUND

Tineo was charged with sale of a controlled substance, conspiracy, and criminal possession of a controlled substance in violation of New York state law in November 1978. The possession counts were dropped, but trial was scheduled on the remaining counts. Tineo retained Attorney Kenneth Linn to represent him at trial. At a pre-trial hearing on January 4, 1980, Tineo tried to discharge Linn as his attorney. Tineo gave as his reasons that Linn could not help him and that Linn had unsuccessfully defended him in a prior matter. The trial judge denied this motion, describing it as brought on the "eve of trial."

Three days later, at another pre-trial hearing, the judge stated that he had learned that there was a potential conflict of interest on Linn's part. One of the prosecution's key witnesses, a confidential informant, had been represented by Linn in the past. The informant was scheduled to testify, and Linn asked to be relieved as counsel due to the possibility of conflict of interest. The judge "reluctantly" granted this motion.

On January 10, another pre-trial hearing was held. Tineo's former counsel, Linn, was there, as well as his new, court-appointed counsel, Frederick Seligman. At this hearing Linn objected to being relieved and Tineo asked that Linn be allowed to represent him. Linn stated that all he knew about the confidential informant was what was in his rap sheet; he argued that he could limit his cross-examination of the informant to information contained in it. As this information would have been turned over to him even if he had not previously represented the informant, Linn saw no problem with his continued representation of Tineo. Furthermore, Linn did not want "to establish this as a precedent" for other attorneys who wanted to represent clients with conflicting interests.

The trial judge rejected Linn's arguments, including the notion that if Linn circumscribed the scope of his cross-examination, he would be able to represent Tineo without conflict. The trial judge did hear from Tineo, who said that he wanted to get the case "over with," and that he did not want to have to pay a new attorney. In response, the court said it would leave "this lawyer," apparently referring to the appointed Seligman, "in for you," and adjourned the trial for a week to give Seligman time to prepare.

On January 21, Seligman reported to the court that Tineo refused to speak to him because Tineo regarded Linn as his attorney. Tineo asked the court what would happen to Linn and the court again explained the conflict of interest. Three days later, as the trial began, Seligman stated for the record that he was not Tineo's attorney of choice. Finally, on the 25th, Seligman told the court that Tineo was not satisfied with Seligman's representation,

and wanted to appear *pro se*. The court responded that if Tineo proceeded *pro se*, it would require Seligman to be stand-by counsel.

Tineo did appear *pro se* and was convicted. *See People v. Tineo*, 64 N.Y.2d 531, 535, 479 N.E.2d 795, 797, 490 N.Y.S.2d 159, 161 (1985). His conviction was upheld on appeal. *Id.* The New York Court of Appeals held that it was "no abuse of discretion for a trial court, acting on the eve of trial, to consider the interests of judicial economy, the integrity of the criminal process, and continuous vacillation of both defendant and counsel, in denying a motion for reinstatement." *Id.* at 537, 479 N.E.2d at 798, 490 N.Y.S.2d at 162.

Tineo filed a petition for a writ of habeas corpus in the district court on August 19, 1986, challenging his conviction as violative of his Sixth Amendment right to counsel.[1] The case was assigned to Judge Stanton, who received a report and recommendation from Magistrate Roberts. The district court substantially adopted this report, and relied primarily on *United States v. Cunningham*, 672 F.2d 1064 (2d Cir.1982), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), in holding that the trial court's refusal to reinstate Linn as Tineo's counsel violated Tineo's Sixth Amendment rights. A certificate of probable cause was granted and respondent filed the instant appeal.

We reverse the decision of the district court.

## DISCUSSION

This appeal presents the question whether the district court was correct in holding that the trial court denied Tineo's Sixth Amendment right to counsel of his choice because of a potential for conflict of interest. We conclude that the district court, relying on a magistrate's report issued prior to the decision in *Wheat v. United States*, — U.S. —, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), reached the wrong result. In *Wheat*, a federal court defendant requested substitution of counsel approximately one week prior to the start of his trial. The attorney he wanted was representing two other defendants involved in various aspects of the defendant's case. The government raised the issue of conflict of interest. The Supreme Court held that the district court correctly denied defendant's request for substitution. It described the competing interests as "the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." *Wheat*, at —, 108 S.Ct. at 1697.

The solution to this clash between a defendant's Sixth Amendment right to counsel and the same defendant's right to a fair trial is a balancing of interests that is committed to the discretion of the trial judge, who has "broad latitude" in this matter. *Id.* at —, 108 S.Ct. at 1699. There is a presumption in favor of a defendant's choice of counsel, but this may be overcome "by a showing of a serious potential for conflict." *Id.; see also United States v. Arrington*, 867 F.2d 122, 128 (2d Cir.1989) (right to counsel of choice not absolute). In balancing what can be competing interests of the Sixth Amendment, the trial court has "an independent duty to ensure that criminal defendants receive a trial that is fair." *Wheat*, — U.S. —, 108 S.Ct. at 1697; *see also United States v. Scopo*, 861 F.2d 339, 344 (2d Cir.1988).

Although it differs from our case factually, *Wheat* controls. In both *Wheat* and the instant case, the trial judge reviewed and balanced the defendant's right to a fair trial and his right to counsel of choice. We do not believe that the trial judge abused his discretion and so we reverse the judgment entered pursuant to the order of the district court granting Tineo's petition.

*Wheat* emphasized the trial judge's duty to preserve the integrity of the justice sys-

---

1. Tineo also challenged the trial court's denial of a motion to sever his trial from that of a co-defendant on Fourteenth Amendment grounds. This claim was dismissed before the district court made its ruling and is not at issue on appeal.

tem by assuring defendants a fair trial. It specifically held that where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel. Such a serious potential existed here.

Linn was presented with the possibly conflicting interests of one client, Tineo, and one former client, the informant. There was no guarantee that Tineo's interests could be served without vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests. To limit cross-examination of the informant to his rap sheet may have prejudiced Tineo, had more searching inquiries been necessary for complete evaluation of the testimony against Tineo. Alternatively, not to limit the cross-examination might have violated the rights of the informant, if, for impeachment purposes, competent cross-examination would delve into matters not contained in the rap sheet. The compromise proffered pretrial here was not acceptable professional conduct; an attorney should never offer to be less thorough or diligent in the interest of his client. *See United States v. Iorizzo,* 786 F.2d 52, 54–58 (2d Cir.1986).

It is hard to conceive of a conflict of interest between clients that would not be serious. *See, e.g., Camera v. Fogg,* 658 F.2d 80, 86 (2d Cir.) (actual conflict between clients sufficient to show prejudice from multiple representation by attorney), *cert. denied,* 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). In the circumstances presented by this case, there can be no doubt that Linn's potential conflict was serious, that his loyalty was divided between a client and a former client, and that representing Tineo would have created a strong appearance of impropriety. This is no less true simply because Linn's representation of the clients did not concern the same matter, as was the case in *Wheat.* Two clients' interests in separate matters may be just as opposed, and the potential for conflict just as serious.

Tineo argues, however, that *Cunningham* is controlling. In *Cunningham,* a defendant with legal training requested that he be allowed to retain an attorney who had successfully represented him for the prior six years. 672 F.2d at 1070–71. The district court disqualified the attorney on the motion of the government, due to conflict of interest between Cunningham and a former client who was to be called to testify against Cunningham. We reversed the district court, noting that Cunningham had relied, successfully, on his attorney for more than six years; that Cunningham could be prejudiced by this attorney's disqualification; that the government, not Cunningham, was the moving party; that both Cunningham and the former client had consented to the representation; and that the interests of the criminal justice system were protected by the "public record" in the case. *Id.* at 1070–73.

The circumstances in *Cunningham* are quite different from those presented in this case. Unlike Cunningham, Tineo had no legal training. Second, Linn had represented him only once before, and unsuccessfully at that. This lack of success, and Tineo's unhappiness with Linn, was one of the reasons Tineo originally asked that Linn be removed. Third, Linn himself, not the government, originally asked that Linn be removed as counsel because of the potential conflict. Considering these differences, *Cunningham* does not directly support Tineo's position.

To the extent, however, that *Cunningham* suggests that Tineo's apparent consent to Linn's representation is a factor weighing in favor of Linn's retention, it is not at all clear that Tineo's consent was knowing. The record is incomplete on this question. Nor is it clear that this suggestion in *Cunningham* retains any force in light of the subsequent holding in *Wheat.* *Cf. Arrington,* 867 F.2d at 128–29 (affirming district court's disqualification of defendant's attorney despite defendant's consent to representation). It is apparent from the transcript of the trial court proceedings that the trial judge did weigh Tineo's rights to counsel and to a fair trial. Even if we assume Tineo made a knowing waiver of his right to a fair trial, we cannot say that the trial judge abused his discretion in determining that Tineo's right to

counsel of his choosing was outweighed by a serious potential conflict of interest. In addition, although there is no record of the informant ever having been asked his views on Linn's representation of Tineo, such consent would not have been dispositive. Even if the informant had consented to the representation, *Wheat* holds that the trial court's independent duty to assure a fair trial may override such a waiver.

Finally, Linn stated at a pre-trial hearing that other attorneys suggested he ask for reinstatement, as his removal would otherwise set a bad precedent. We find especially disturbing the suggestion that conversations with other members of the bar encouraged him to ask for reinstatement. That other attorneys are concerned that they may not be able to represent some clients because of ethical considerations would be no justification for a trial judge to ignore potential conflicts of interest. In a situation like this, where the defendant was not satisfied with counsel in the first place, and counsel wanted to be relieved because of a potential conflict and later changed his position because of his greater concern for the precedent he would set than his responsibility to his clients, it is the duty of the trial judge to ensure that the defendant's rights to a fair trial are protected fully. The trial judge here did just that.

## CONCLUSION

On the record presented to us, we cannot say that the trial judge's decision was an abuse of discretion and we therefore reverse the judgment of the district court granting the petition for a writ of habeas corpus and remand this matter to the district court with instructions to deny the petition for a writ of habeas corpus.