ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Upon order of the supreme court, the Circuit Court of George County held a hearing on the merits of the motion for post-conviction relief filed by Julius Kiker. Finding no merit to the claim, the circuit court denied Kiker’s motion. Aggrieved, Kiker appeals and argues that his Sixth Amendment right to counsel was violated because one of his trial attorneys also represented a State witness who testified against Kiker at trial. Finding that Kiker received competent representation from a conflict-free attorney, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On July 29, 2003, Kiker was tried in the Circuit Court of George County for the murder of his wife, Sylvia Kiker. He was represented at trial by two attorneys, Darryl Hurt, Sr., and Sidney Barnett. Barnett was appointed to represent Kiker shortly after he was arrested, and about a week later, Hurt was hired by Kiker’s family. Following the trial, Kiker was convicted of murder. He filed a motion for a new trial, which the circuit court overruled. He then filed an appeal, and this Court handed down an opinion affirming Kiker’s conviction.
 
 Kiker v. State,
 
 919 So.2d 190 (Miss.Ct.App.2005). The supreme court subsequently granted Kiker leave to proceed with a pro se motion for post-conviction relief solely on the issue of whether Kiker’s Sixth Amendment right to counsel was violated because Barnett, at the time he represented Kiker, also represented Bobby Crawford, a witness for the State who testified against Kiker. At the time of Kiker’s trial, Crawford had separate, unrelated charges pending against him. The circuit court held an evidentiary hearing on Kiker’s motion on July 10, 2008, and entered an order denying the requested relief on July 22, 2008.
 

 
 *1084
 
 ¶ 3. At the evidentiary hearing, Lee Martin, who was with the Attorney General’s Office and was the lead prosecutor from Kiker’s trial,
 
 [1]
 
 testified concerning Kiker’s trial. According to Martin, Hurt served as Kiker’s lead attorney. The State called twelve witnesses, and Hurt handled all of the cross-examination. Hurt conducted the direct examination of three of the five defense witnesses, including the questioning of Kiker. Hurt also handled voir dire and the opening and closing statements. Martin stated that “[n]ot only was there never a deal offered to Mr. Crawford; there was never any discussion, negotiation about a potential plea bargain with Mr. Crawford.” Martin was not aware that Crawford had charges pending against him until after trial began, and he was not involved in the case against Crawford. According to Martin, once Barnett realized that there was a potential conflict of interest, he informed the circuit court and the State. Unfortunately, this did not take place until after Kiker’s trial had begun.
 

 ¶ 4. While Martin admitted that Crawford provided incriminating evidence against Kiker, he denied that Crawford’s testimony was essential or the “center-pole” of the case. Martin pointed out that the State also presented the following evidence: (1) the victim’s son who saw Kiker with a gun and saw his mother and Kiker arguing earlier in the day, (2) the deputy sheriff who responded to the 911 call and saw Kiker in possession of a gun and attempting to conceal the body, and (3) the physical evidence collected at the scene that connected Kiker with the murder. Martin described Hurt’s cross-examination of Crawford as “pretty typical of cross-examination of a jail-house informant.” Martin testified that Hurt: (1) tried to characterize Crawford as a professional State witness, (2) brought out Crawford’s criminal history, (3) inquired about Crawford being a drug user, and (4) connected Crawford to the victim’s family.
 

 ¶5. Kevin Bradley, a former assistant district attorney for George and Greene Counties, also testified at the post-conviction-relief hearing. During Bradley’s term as assistant district attorney, he handled the charges against Crawford. Bradley testified that Crawford had two charges pending in October 2005, both of which related to events on or about March 14, 2002. One indictment was for possession of methamphetamine, and the other was for possession of precursor chemicals. A bench warrant was issued for Crawford on October 20, 2003, almost three months after Kiker’s trial; however, the warrant was never served on Crawford until July 19, 2005. According to Bradley, Crawford was presumably on the run in the interim. In July 2005, Crawford was also charged with failing to register as a sex offender. Crawford pleaded guilty to all three charges. On each of the first two charges, the circuit court sentenced him to eight years in prison, with three years to serve and five years of post-release supervision, with the sentences to run concurrently. On the third charge, the circuit court sentenced him to five years in prison, with three years to serve and two years of post-release supervision, with the sentence to run consecutively to the first two sentences. Bradley testified that he was not involved in Kiker’s case, and there was no deal with Crawford to elicit his testimony.
 

 ¶ 6. The circuit court concluded that even though Barnett was representing both Kiker and Crawford, there was no actual conflict at the time Crawford testified against Kiker. The circuit court
 
 *1085
 
 found that while Barnett did represent Kiker at trial, Hurt cross-examined Crawford and handled the vast majority of the trial. Furthermore, the circuit court found that Kiker’s attorneys were not deficient and that the State had not offered Crawford any plea deal in exchange for testifying. Accordingly, the circuit court denied Kiker’s motion for post-conviction relief. Kiker timely filed an appeal following that judgment.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court’s standard of review regarding a trial court’s denial of a motion for post-conviction relief is well settled: we will not disturb the trial court’s factual findings unless they are clearly erroneous.
 
 Thompson v. State,
 
 990 So.2d 265, 267(¶ 3) (Miss.Ct.App.2008) (citation omitted). However, we will review questions of law under a de novo standard.
 
 Id.
 

 DISCUSSION
 

 ¶ 8. Kiker essentially raises only one issue on appeal — that his Sixth Amendment right to counsel was violated because Barnett also represented Crawford, who had charges pending against him and who testified against Kiker. Kiker argues that his defense was prejudiced because of the conflict of interest that arose due to Barnett’s representation of both Kiker and Crawford. It is Kiker’s contention that the circuit court abused its discretion in refusing to grant his motion for post-conviction relief based on this issue. In support of his argument, Kiker cites numerous cases that hold that a defendant’s Sixth Amendment right is violated when his counsel has an actual conflict of interest because of counsel’s representation of the defendant and a co-defendant or a witness who testifies against the defendant.
 

 ¶ 9. Kiker claims to have raised eight issues on appeal, each of which he argues shows the circuit court’s ruling to be clearly erroneous. He takes issue with five of the circuit court’s findings: (1) Barnett had no actual conflict with Kiker; (2) Crawford was not a key witness; (3) the State had no deal with Crawford; (4) the performances by Kiker’s attorneys were not deficient; and (5) Kiker proceeded on with the trial after finding out about Barnett’s representation of Crawford. Additionally, Kiker takes issue with three additional issues not addressed by the circuit court: (1) the court had a duty to intervene after learning that Barnett represented both Kiker and Crawford; (2) the jury was exposed to the conflict; and (3) the court had a duty to safeguard the proceedings. These are all issues related to Kiker’s claim that his defense was prejudiced by Barnett’s representation.
 

 ¶ 10. The Sixth Amendment to the United States Constitution provides that all criminal defendants have the right to assistance of counsel for his defense. The Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment.
 
 Gideon v. Wainwright,
 
 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
 

 ¶ 11. In the present case, there is no question that a potential conflict of interest existed due to Barnett’s representation of both Kiker and Crawford. However, there was no evidence or allegation that Kiker’s other attorney, Hurt, had any conflict of interest. The circuit court found that:
 

 A review of the transcript of the trial clearly shows that [Hurt] was the individual that cross-examined [Crawford] and that it was a full cross-examination. The Court finds that out of the 14 witnesses who testified on behalf of the State of Mississippi, [Hurt] cross-exam
 
 *1086
 
 ined every one of those witnesses.
 
 [2]
 
 The Court finds that [Hurt] conducted voir dire, opening statement, and closing arguments on behalf of the Defendant. The Court specifically finds that the attorneys who represented [Kiker] at trial were not deficient and that no prejudice resulted to the Defendant as a result of [Barnett’s] representation of one witness for the State of Mississippi. That information was not withheld from the jury or the Defendant, [Kiker], and that no actual conflict existed, especially in light of [Hurt’s] role as lead attorney. [Hurt] had absolutely no duties to [Crawford] and conducted a full cross-examination of that witness.
 

 For the sake of thoroughness, we will very briefly address each of the circuit court’s findings with which Kiker takes issue. First, the circuit court did not state that Barnett had no actual conflict, only “that there was not an actual conflict in existence at the time the State’s witness, [Crawford], testified.... ” Second, the circuit court did not find that Crawford was not a key witness; the court found that he was not the “eenterpole” of the State’s case because the State presented additional testimony of witnesses to events that day and scientific evidence. Third, the circuit court found that Crawford did not have a deal with the State. This is borne out in the record and by the fact that he did not plead guilty to the crimes for which he was charged until more than three years after Kiker was convicted. Fourth, he circuit court found that Kiker’s attorneys were not deficient and that Kiker suffered no prejudice due to their representation of him. Kiker argues that this finding is “irrelevant and gratuitous.” To the contrary, we find that it was an appropriate finding considering that Kiker was alleging that he was not adequately represented at his trial. Fifth, as for the trial court’s finding that Kiker proceeded on with trial after learning about Barnett’s conflict, we agree that it is not proper to fault Kiker for this issue. Nevertheless, we see no reason why this statement by the circuit court requires reversal in light of the ultimate fact that Kiker received competent, conflict-free representation. Sixth, as for the “findings not made by the trial court,” which Kiker cites, we do not find that these had any effect on the trial in light of the fact that Kiker was represented by a conflict-free attorney who handled the vast majority of the case, including the cross-examination of the State’s witness with whom Barnett had a conflict.
 

 ¶ 12. In
 
 Stringer v. State,
 
 485 So.2d 274, 275 (Miss.1986) (quoting
 
 Cuyler v. Sullivan,
 
 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)), the Mississippi Supreme Court referenced the United States Supreme Court’s standard for determining whether a conviction requires reversal based on a conflict of interest. The Mississippi Supreme Court stated that: “We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer’s performance.”
 
 Id.
 
 (quoting
 
 Cuyler,
 
 446 U.S. at 350, 100 S.Ct. 1708).
 

 ¶ 13. Kiker cites numerous cases that he claims support his position, but we find that those cases are distinguishable. In
 
 United States ex rel. Stewart on Behalf of Tineo v. Kelly,
 
 870 F.2d 854, 857 (2nd Cir.1989), the Second Circuit addressed the issue of a single attorney representing
 
 *1087
 
 both the defendant and a witness for the prosecution. The Second Circuit reversed the judgment of the district court that found that Jose Tineo’s Sixth Amendment rights were violated when the trial judge denied the defendant his counsel of choice. The Second Circuit concluded that the trial judge did not abuse his discretion in denying Tineo’s right to counsel of his choice because Tineo’s requested counsel had a conflict in that he had previously represented the government informant who testified against Tineo.
 
 Id.
 
 at 858. In
 
 United States v. Combs,
 
 222 F.3d 353, 361 (7th Cir.2000) (citing
 
 United States v. Lowry,
 
 971 F.2d 55, 59 (7th Cir.1992)), which also involved a single attorney for the defendant who represented a witness for the prosecution, the Seventh Circuit noted that a defendant has a right to “representation by an attorney unfettered by any conflict of interest.” The Seventh Circuit went on to note that “[t]he court is required to take action to protect the defendant’s right to effective assistance of counsel unless, after inquiry, the court believes that a conflict of interest is unlikely to arise.”
 
 Id.
 
 (citing
 
 United States v. Vasquez,
 
 966 F.2d 254, 261 (7th Cir.1992)). The other cases cited by Kiker present similar situations involving a single attorney who had a conflict of interest; none of those cases involved a factual scenario similar to his case.
 
 See, e.g., United States v. Baker,
 
 10 F.3d 1374 (9th Cir.1993) (overruled on other grounds);
 
 Serra v. Mich. Dep’t of Corr.,
 
 4 F.3d 1348 (6th Cir.1993).
 

 ¶ 14. Kiker argues on appeal that the question before the circuit court was, “did Barnett have divided loyalties or not?” As we have stated, there is no question that Barnett had divided loyalties. At the post-conviction-relief hearing on this matter, the lead prosecutor in Kiker’s trial readily stated that Barnett should have informed Kiker about Barnett’s representation of Crawford. Nevertheless, Barnett did not cross-examine Crawford, and he seems to have played a negligible role in the trial. Barnett did not cross-examine any of the State’s twelve witnesses, did not conduct voir dire, did not make the opening or closing statement, and only conducted the direct examination of two of the five defense witnesses. When Barnett became aware of the conflict, he brought it to the attention of the circuit court and the State.
 

 ¶ 15. Based on the unique facts of the present case, we find no abuse of discretion with the circuit court’s denial of Kiker’s motion for post-conviction relief. Despite Barnett’s conflict of interest, the situation was remedied by Hurt’s representation of Kiker and his handling of the vast majority of the trial, including the questioning of Crawford. Kiker has failed to show any actual conflict or prejudice to his case that persisted despite Hurt’s representation. Throughout his trial, Kiker was competently represented by conflict-free counsel. Accordingly, we find that this issue is without merit.
 

 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . According to Martin, at the request of the victim's family, the George County District Attorney's Office allowed the Attorney General's Office to handle Kiker's prosecution.
 

 [2]
 

 . Testimony from the post-conviction-relief hearing indicates that twelve witnesses testified on behalf of the State. Nevertheless, the circuit court was correct that Hurt handled the cross-examination of every State witness.